IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-685-LTB

**CHRISTOPHER L. COVALT**, Inmate No. 149483,

Plaintiff,

v.

**INMATE SERVICES CORPORATION**;
**RANDY CAGLE**, Owner of Inmate Services Corporation;
**JOHN DOE**; a driver known as "Captain";
**JANE DOE**, a driver known as "Sarge";
**LARAMIE COUNTY SHERIFF'S OFFICE**;
**DANNY GLICK**, Sheriff of Laramie County;
**ROCKWALL COUNTY DISTRICT ATTORNEY'S OFFICE**; and
**ROCKWALL COUNTY DISTRICT ATTORNEY**,

Defendants.

---

**ORDER TO DISMISS**

---

Plaintiff, Christopher Covalt, currently is in the custody of the Colorado Department of Corrections and is confined at the Limon Correctional Facility in Limon, CO. Plaintiff initiated this action by filing *pro se* a Prisoner Complaint pursuant to 42 U.S.C. § 1983 and a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915. Plaintiff has been granted leave to proceed pursuant to § 1915.

**A. Mandatory Review Provisions and Standards of Review**

In the Prison Litigation Reform Act (PLRA), Pub.L. No. 104–134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of

prisoner claims.

Specifically, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed *in forma pauperis* (IFP), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In addition, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 5). Moreover, some of the Defendants are employees of a governmental entity. Thus, his Complaint must be reviewed under the authority set forth above.

In reviewing complaints under these statutory provisions, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007) (rejecting the traditional standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations

of the complaint, are the "factual allegations ... enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" *Bell Atlantic Corp.*, 550 U.S. at 555. When reviewing a complaint for failure to state a claim, the Court may also consider documents attached to the complaint as exhibits. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (internal citation omitted). Moreover, a legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). *See also Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992) (holding that a court may dismiss a claim as factually frivolous if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional).

The Court must construe the Complaint liberally because Plaintiff is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If a complaint reasonably can be read “to state a valid claim on which the plaintiff could prevail, [a court] should do so despite the plaintiff’s failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.” *Hall*, 935 F.2d at 1110. However, a court should not act as a *pro se* litigant’s advocate. *See id.* *Sua sponte* dismissal is proper when it is patently obvious that plaintiff could not prevail on the facts alleged and it would be futile to allow the plaintiff to amend. *Andrews v. Heaton*, 483 F.3d 1070, 1074 (10th Cir. 2007); *Curley v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (internal quotations omitted).

**B. Plaintiff’s Allegations and Claims**

On November 8th, 2013, Plaintiff was picked up as a pre-trial detainee on two warrants from Colorado and Wyoming, from the Rockwall County Jail in Rockwall, Texas and transported seven

days, non-stop, in a fifteen passenger Ford van operated by Inmate Services Corporation. During the course of the trip, Plaintiff was taken on an indirect route that traversed Texas, New Mexico, Arizona, Nevada, California, Oregon, Washington, Idaho, Utah, Colorado and arrived in Cheyenne, Wyoming on November 14th, 2013. The van was driven solely by two employees of Inmate Services Corp. who called themselves “Sarge,” a female, and “Captain,” a male, who were in charge of the care, custody and control of the inmates in the van. The van did not stop at length at any locations to rest during the seven days of travel. The only stops were made briefly (under fifteen minutes) to break for fuel, fast food and to pick up or drop off passengers.

Plaintiff makes seven claims in this action. First, he complains that, during the entire seven-day span, he never was allowed to stop at any facility to sleep lying down. Instead, he was forced to sleep while sitting upright between two other inmates while handcuffed and while the van traveled between fifty-five to eighty miles per hour on the highway. Second, he complains that on each of the seven days of the trip, there was no drinking water available onboard the van. The only water intake allowed to the Plaintiff was a "free water cup" provided at each of the three daily fast food stops, primarily at McDonald's restaurants. This cup was approximately 10 oz. in size and he was allowed just three of them each day. Third, he complains that on each day of the trip, the Plaintiff’s only food intake was a small "Sausage McMuffin" each morning and two "Dollar Cheeseburgers" served one at lunch and one at dinner times. As a result, he lost eight pounds on the trip. Fourth, he complains that he was not given an opportunity to exercise. Rather, he was confined to a section of a bench seat nearly the whole time, except when they stopped for restroom time at gas stations. He never was released from the restraints during the seven-day trip. Fifth, he claims that the van did not stop for adequate opportunities for Plaintiff to use the bathroom to relieve himself of urine. Those breaks were only provided during the stops made to refuel the van which were spaced on

average 5 to 6 hours apart. In addition, he was not allowed to be uncuffed so as to be able to properly clean himself. He was not allowed the opportunity to shower and clean himself during the seven-day trip. In his sixth claim, Plaintiff asserts that, for certain periods during five days of the trip, he was forced to ride on a black perforated plastic "milk crate" for hundreds of miles at a time because the seating arrangements only changed during gas stops. This crate was situated loosely on the floor of the van at the right end of a bench seat. It did not support the Plaintiff, was painful to his legs and back, and did not have any way to support a seat belt. In addition, he claims that both Sarge and Captain were careless and reckless drivers during the trip. After each meal, the drivers would smoke cigarettes in the van for fifteen minutes and provide for and allow the other inmates to smoke cigarettes as well. For a large part of the trip, Plaintiff was seated in front of a convicted and sentenced prisoner who was not segregated to his own area or kept away from the pre-trial inmates. This prisoner was an admitted member of the very violent California Sureno's street gang and was being transferred from a California prison to an Oklahoma prison. This prisoner was verbally and physically abusive to Plaintiff and disrupted Plaintiff's attempts at a nap by head butting or flicking with his middle finger, the back of Plaintiff's head. Plaintiff was forced to sit sideways for five days with the prisoner in his peripheral vision or facing forward with his head aimed down and resting on the seat in front of him so as to thwart any attacks of retaliation from behind him.

In his seventh claim, he asserts that he was denied due process because he was denied a pre-extradition habeas corpus hearing, appointed counsel, a signed extradition warrant from the Governor of the asylum state, and the extradition transportation to be handled by the U.S. Marshall's service. He claims that, while in the Rockwall County Jail, Plaintiff sent a "kite" to the jail asking to speak with an attorney before being extradited, but did not receive a response before he was transported out of the jail. He brings this claim against the Rockwall County District Attorney's

Office, Rockwall County D.A. John Roe, Laramie County Sheriffs Department and Sheriff Danny Glick.

For the reasons stated below, the Complaint and the action will be dismissed in part pursuant to screening authority set forth above. The pertinent grounds which will result in the dismissal are addressed below. An appropriate order follows.

**C. Liability under 42 U.S.C. § 1983**

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330–331 (1986). In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393–394 (1989) (internal quotations and citations omitted). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id*.

1. Plaintiff's Conditions of Confinement Claims

Plaintiff's first six claims concern the conditions of his confinement during his transport from Texas to Wyoming. Claims concerning prison conditions filed by pretrial detainees are evaluated under the Due Process Clauses of the Fifth and Fourteenth Amendments, which prohibit the defendants from undertaking acts that amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In order to determine whether the challenged conditions of pre-trial confinement amount to punishment:

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of the detention facility officials, that determination generally will turn on whether [it has] an alternative purpose ... and whether it appears excessive in relation to [that] purpose.... Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees.

*Id*. at 538–39 (citations, brackets and internal quotations omitted).

Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims. *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998). The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation omitted. Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Farmer*, 511 U.S. at 834.

The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id*. In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of

decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.

*Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (internal citations and quotations omitted).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in *Farmer* as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.... But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–838 (internal citations and quotations omitted).

The failure to provide basic necessities, if sufficiently prolonged and severe, can satisfy the objective prong of this test. *Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996). Notwithstanding, "[t]his inquiry turns not only on the severity of the alleged deprivations, but also on their duration." *Craig*, 164 F.3d at 495. "The difference between enduring certain harsh conditions for seven weeks versus six months may be constitutionally significant." *Id*. at 496.

Plaintiff's first six claims complain about the conditions he endured when he was transported from Texas to Colorado over a seven-day period. This Court's research indicates that similar privations alleged by prisoners during prisoner transportation do not violated the Eighth Amendment. *See, e.g., Fenlon v. Quarterman*, Civil No. 07-532, 2008 WL 637627 (E.D. Tex. Mar. 5, 2008) ("In this case, Fenlon's complaints concerning transportation are essentially claims about mere discomfort or inconvenience, and thus not of constitutional dimensions."), *aff'd* 350 F. App'x 931 (5th Cir. 2009); *Noblitt v. Texas*, Civil No. 06–780, 2010 WL 1377761 (E.D. Tex. Feb. 10, 2010) (holding that prolonged sitting and standing and limited medicine, air and water during transport did not rise to a constitutional violation).

Accepting Plaintiff's allegations as true, none of the conditions of his transport deprived him of adequate shelter, food, drinking water, and sanitation such that he could be said to have been deprived of the minimal civilized measure of life's necessities during the seven days of travel. A greyhound bus traveler would experience similar deprivations taking a trip across the country. In order to state an Eighth Amendment violation, the conditions presenting the risk must be "sure or very likely to cause serious illness and needless suffering," and give rise to "sufficiently imminent dangers." *Helling v. McKinney*, 509 U.S. 25, 33, 34–35 (1993). While the conditions were not ideal, they simply do not amount to punishment as prohibited under the Eighth and Fourteenth Amendments. *Cf. Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (assertion of excessively hot cell-houses, which made sleeping difficult were insufficient to state a claim of violation of the Eighth Amendment); *Ford v. Brd. of Mgrs of New Jersey State Prison*, 407 F.2d 937, 939–940 (3d Cir. 1969) (no Eighth Amendment claim where prisoner fed four slices of bread and one pint of water three times a day with a full meal every three days).

As the Supreme Court emphasized, "the length of confinement cannot be ignored in deciding

whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of gruel providing 1000 calories a day might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). Here, Plaintiff was exposed to the conditions he complains of for only a few days. Moreover, he was not denied food, water or shelter. Rather, he merely complains about the quantity of food and water that he was allowed, the minimal bathroom breaks, the lack of lying-down sleeping facilities and the fact that he was handcuffed during the transport. However, it is not reasonable to assume that arrested persons will be transported without a means of ensuring safety and protection. While no doubt uncomfortable, the requirement that prisoners travel in shackles protects not only the guards but the other prisoners as well. In their totality, while Plaintiff's allegations describe uncomfortable conditions of confinement, they do not allege that he was deprived of a minimum measure of life's necessities. Moreover, even if the Court assumes the responsible defendants were grossly negligent, the Eighth Amendment claim still lacks merit because deliberate indifference requires a higher degree of fault than gross negligence. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990). Accordingly, Plaintiff's first six claims will be dismissed.

2. <u>Extradition Claim</u>

In his remaining seventh claim, Plaintiff alleges that he did not receive several federally protected measures that he is mandated to receive pursuant to The Extradition Clause (U.S. Constitution Art. IV, sec. 2, cl 2) and 18 U.S.C. § 3182. Specifically, he contends that he was denied a pre-extradition hearing, appointed counsel, a signed extradition warrant from the Governor of the asylum state, and transportation handled by the U.S. Marshall's service. He brings these claims against the Rockwall County District Attorney's Office, Rockwall County D.A. John Roe, Laramie County Sheriff's Department and Laramie County Sheriff Danny Glick.

District attorneys are entitled to absolute immunity from a civil suit for damages under 42 U.S.C. § 1983 in initiating a prosecution and in presenting the state's case. *Imbler v. Pachtman*, 424 U.S. 409, 427, 431 (1976). To the extent Plaintiff raises claims on the basis of the District Attorneys Office signing the IAD forms and correspondence, the district attorney's alleged signing of these documents is not actionable under 42 U.S.C. § 1983. The signing of these documents is a quasi-judicial function and prosecutors have absolute immunity from claims arising out of the performance of that function. *See Wesley v. State*, 974 F.2d 1346, 1992 WL 208205, *3 (10th Cir. 1993) (district attorney absolutely immune from suit for money damages based on alleged violation of the Uniform Criminal Extradition Act). Consequently, these Defendants will be dismissed from this action. The remaining Defendants are the Laramie County Sheriffs Department and Sheriff Danny Glick. Both of these Defendants reside in the State of Wyoming.

With respect to the Sheriff's Department, the County can only be liable if it had a custom, practice, or policy that encouraged or condoned the unconstitutional behavior. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Where the plaintiff does not contend that the municipality, directly inflicted the injury through its legislature or a "final municipal decisionmaker," but instead that a custom or policy caused one of its subordinate employees to do so, the municipality is not automatically liable for that subordinate's actions. *Id*. at 403. The County cannot be held liable under § 1983 "solely because it employs a tortfeasor." *Id*. Instead, the Court must apply "rigorous standards of culpability and causation" to ensure that the municipality is held liable only for its own illegal acts and not those of subordinate employees. *Id*. at 405. Thus, Plaintiff must demonstrate "a direct causal link between the municipal action and the deprivation of federal rights," and he must show that the municipal action was taken with "deliberate indifference" to its known or obvious consequences. *Id*. at 404. Plaintiff's allegations do not meet this standard.

Moreover, Mr. Covalt fails to allege facts to implicate Defendant Glick, in his individual capacity, in a deprivation of his constitutional rights. Personal participation is an essential element in a § 1983 action. *See Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976). To establish personal participation, Plaintiff must show how each named individual caused the deprivation of a federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Furthermore, "when a plaintiff sues an official under § 1983 for conduct "arising from his or her superintendent responsibilities," the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677). Because Mr. Covalt fails to allege facts to show that Defendant Glick was involved personally in a deprivation of his constitutional rights, he also is an improper party to this action.

Finally, neither Defendant Glick nor the Laramie County Sheriff's Office reside in Colorado. Both are residents of the State of Wyoming. The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945). The plaintiff has the burden of establishing jurisdiction. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The Plaintiff must make a *prima facie* showing of personal jurisdiction by demonstrating facts that, if true, would support jurisdiction over the defendant. *AST Sports Science, Inc. v. CLF Distribution Limited*, 514 F.3d 1054, 1057 (10th Cir. 2008).

In *Trujillo v. Williams*, 465 F.3d 1210 (10th Cir. 2006), the Court of Appeals for the Tenth Circuit held that out-of-state prison officials did not have the minimum contacts necessary for the New Mexico District Court to assert personal jurisdiction and that allowing the New Mexico District Court to exercise personal jurisdiction over the out-of-state correctional officials would offend traditional conceptions of fair play and substantial justice. The same is true here. As Plaintiff has failed to show that this Court has personal jurisdiction over these Defendants, they are improper parties.

Plaintiff's Complaint fails to state a claim over the any of the named Defendants. Accordingly, it is

**ORDERED** that the Complaint and this action are **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and/or 28 U.S.C. § 1915A. It is

**FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is denied. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Plaintiff files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED at Denver, Colorado, this 8th day of May, 2015.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, Senior Judge
United States District Court